# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| AMANDA BRUMFIELD, *on behalf of herself and all others similarly situated* | ) ) ) | |
| Plaintiff, | ) ) | No. 2:18-cv-00591-DCN |
| vs. | ) ) ) | **ORDER** |
| KINDRED HEALTHCARE INC, KINDRED HEALTHCARE OPERATING INC *d/b/a Kindred at Home* | ) ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the court on Kindred Healthcare, Inc. and Kindred Healthcare Operating Inc's ("defendants") motion to transfer case or in the alternative to compel arbitration, strike collective claims, dismiss, and transfer, ECF No. 17, and defendant's motion to stay proceedings, ECF No. 19. For the reasons set forth below, the court grants in part and denies in part the motion to compel, strike, dismiss, and transfer, negating the need for the court to rule on the motion to stay.

## I. BACKGROUND

This case is a collective action brought by Amanda Brumfield ("Brumfield"), a licensed practical nurse, against defendants for their alleged failure to pay her and other similarly situated employees overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, <u>et seq.</u> Brumfield is joined by four other licensed practical nurses and physical therapy assistants who argue that defendants have failed to properly compensate them for overtime work. The court lists the five plaintiffs along with pertinent information for each for ease of reference: (1) Brumfield, who last worked in

1

Tyler, Texas and is allegedly bound by an arbitration agreement; (2) Andrew Tyler ("Tyler"), who last worked in North Charleston, South Carolina and is bound by an arbitration agreement, ECF No. 18-4; (3) Cynthia Scoon ("Scoon"), who last worked in Selma, Alabama and is bound by an arbitration agreement, ECF No. 18-5; (4) Terra Jackson ("Jackson"), who last worked in Selma, Alabama and is bound by an arbitration agreement, id.; and (5) Cynthia Harris ("Harris"), who last worked in Marietta, Georgia and is not bound by an arbitration agreement.

Brumfield filed suit on March 1, 2018, and the rest of the opt-in plaintiffs joined the case between March 1, 2018 and March 26, 2018. On April 10, 2018, Brumfield filed a motion to certify the collective action. On April 24, 2018, defendants filed the present motion to transfer the case, ECF No. 17, and motion to stay proceedings, ECF No. 19. On May 8, 2018, Brumfield filed responses in opposition to both motions. On May 15, 2018, defendants filed their respective replies. On May 29, 2018, Brumfield filed a sur reply, and on June 8, 2018, defendants filed their sur reply. The motions have been fully briefed and are ripe for the court's review.

## II. STANDARD

Section 4 of the Federal Arbitration Act ("FAA") provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 2 of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[Q]uestions of arbitrability must be

2

addressed with a healthy regard for the federal policy favoring arbitration . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 23–24 (1983). To that end, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Peoples, 867 F.2d at 812 (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583 (1960)). Thus, the court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute." Id.

Despite these policies favoring arbitration, federal courts have the authority to evaluate the validity of arbitration agreements. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967) ("[A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate."). "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010). However, when the arbitration agreement includes a provision that delegates to the arbitrator exclusive authority to resolve any disputes regarding the validity and enforceability of the agreement, the court must defer to that provision and leave disputes about the validity of the agreement to the arbitrator. Id. at 67–72.

### III.  DISCUSSION

Defendants asks the court to transfer the case to the Eastern District of Texas to allow that court to compel Brumfield to individual arbitration and make rulings regarding

3

the case and the other opt-in Plaintiffs. In the alternative, defendants seek an order: (1) compelling Tyler to arbitration as the sole opt-in plaintiff subject to this court's jurisdiction; (2) dismissing Brumfield, Scoon, and Jackson with prejudice under Rule 12(b)(3), so that they may pursue their claims in individual arbitration, if at all, in their respective jurisdictions; and (3) transferring venue of the remaining plaintiff, Harris, to the Northern District of Georgia.

### A. Validity of the Class / Collective Action Waiver

Four out of the five named plaintiffs appear to be bound by arbitration agreements. These agreements are not all identical, but they do all contain the following relevant requirements: (1) to arbitrate all suits related to wages and overtime, rather than resolve the disputes through litigation; (2) to arbitrate in the city in which the employee is or was last employed by defendants; (3) that disputes about the enforceability and validity of the arbitration agreement or any portion of the agreement, except for the class / collective action waiver, are covered by the agreement, meaning that it is up to the arbitrator to determine whether the arbitration agreement itself is valid and binding; and (4) a class / collective action waiver. The class / collective action waivers provide that the parties may only bring disputes in arbitration and on an individual basis, not on a class or collective basis.

The court must first determine whether the class and collective action waivers, which would preclude plaintiffs from bringing this suit in its current state as a collective action, are valid and enforceable. The court finds that they are. Brumfield cites the Seventh Circuit's decision in Lewis v. Epic Sys. Corp., 823 F.3d 1147, 1154 (7th Cir. 2016) in support of her argument that the collective action waivers contained in each of

4

the agreements violate the National Labor Relations Act ("NLRA") and are therefore unenforceable. ECF No. 31 at 20. However, the Seventh Circuit's decision in Epic Systems was appealed, and since the filing of the motion to transfer, the Supreme Court has ruled on this exact issue, finding that the NLRA in no way displaces the Federal Arbitration Act ("FAA"). In support of its holding, the Court discusses how the FLSA does not prohibit agreements for individualized arbitration or invalidate class / collective action waivers:

> The employees' underlying causes of action involve their wages and arise not under the NLRA but under an entirely different statute, the Fair Labor Standards Act. The FLSA allows employees to sue on behalf of "themselves and other employees similarly situated," 29 U. S. C. §216(b), and it's precisely this sort of collective action the employees before us wish to pursue. Yet they do not offer the seemingly more natural suggestion that the FLSA overcomes the Arbitration Act to permit their class and collective actions. Why not? Presumably because this Court held decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does not displace the Arbitration Act or prohibit individualized arbitration proceedings. Gilmer v. Interstate/Johnson Lane Corp., 500 U. S. 20, 32 (1991) (discussing Age Discrimination in Employment Act). In fact, it turns out that "[e]very circuit to consider the question" has held that the FLSA allows agreements for individualized arbitration. Alternative Entertainment, 858 F. 3d, at 413 (opinion of Sutton, J.) [ ]. Faced with that obstacle, the employees are left to cast about elsewhere for help. And so they have cast in this direction, suggesting that one statute (the NLRA) steps in to dictate the procedures for claims under a different statute (the FLSA), and thereby overrides the commands of yet a third statute (the Arbitration Act).

Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1626 (2018).

Prior to Epic Systems, the Fourth Circuit had also explicitly found that courts may not alter an "otherwise valid arbitration agreement[] by applying the doctrine of unconscionability to eliminate a [contract] term barring classwide procedures." Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 180–81 (4th Cir. 2013); see also Adkins v. Labor Ready, Inc., 303 F.3d 496, 499 (4th Cir. 2002) (finding "no suggestion in the text,

5

legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute."); Carmax Auto Superstores, Inc. v. Sibley, 215 F. Supp. 3d 430, 435–36 (D. Md. 2016) (acknowledging the "strong federal presumption in favor of arbitration agreements and the Fourth Circuit's holding that class action waivers are not incompatible with the FAA's savings clause on the basis of unconscionability").

In the current matter, there is nothing in the language of the class / collective action waivers to indicate that they are invalid or unenforceable. Further, Brumfield has not argued any specific reasons why the court should find the waivers to be invalid, other than the Seventh Circuit's decision in Epic Systems, which has since been overruled. Thus, the court finds the class / collective action waivers to be valid and enforceable, and finds that they prohibits the plaintiffs from bringing this collective action.

**B. Enforcing the Arbitration Agreements**

Those plaintiffs bound by arbitration agreements—Brumfield, Tyler, Scoon, and Jackson—cannot bring their claims in this court as a collective action; rather, their arbitration agreements must be enforced. These arbitration agreements all require that the employees arbitrate their claims in the jurisdiction where they last worked. Other than Tyler, who last worked in South Carolina, this court cannot compel the remaining plaintiffs to arbitrate because only courts in the jurisdiction where arbitration is required by the Agreement can compel the parties to arbitration. See, e.g., Elox Corp. v. Colt Indus., Inc., 952 F.2d 395 (4th Cir. 1991) (unpublished) ("The district court must [ ] apply a forum selection clause contained in the agreement if such a clause exists . . . [and] if a court orders arbitration, the arbitration must be held in the same district as the court"),

Developers Sur. & Indem. Co. v. Carothers Constr., Inc., 2017 WL 3054646, at *1 (D.S.C. July 18, 2017) ("Where a valid arbitration agreement covering the issues in a case exists but the agreement specifies an arbitral venue outside the district, transfer is the appropriate remedy, because if the forum selection clause is mandatory, then, the interest of justice would weigh toward transfer."), Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., 628 F. Supp. 2d 674, 683 (E.D. Va. 2009) (finding that although the Fourth Circuit has not ruled directly on whether a district court may compel arbitration outside of its geographic jurisdiction, "the majority view holds that, where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has the authority to compel arbitration under § 4 of the FAA"). Because plaintiffs are bound to arbitrate in different states and this court cannot compel them to arbitration, the court transfers their cases to their respective districts to enable those courts to compel them to arbitration.

Tyler, Scoon, and Jackson all signed arbitration agreements, and make no argument that their agreements are not valid or should be found void. Even if they did, the arbitration agreement requires that all disputes about the validity of the agreement should be determined by the arbitrator, not the courts. Scoon and Jackson last worked in Selma, Alabama, and Tyler last worked in Charleston, South Carolina. Thus, the court transfers Scoon and Jackson's cases to the United States District Court for the Southern District of Alabama. The court orders Tyler to arbitrate his claim here in South Carolina.

Brumfield also appears to be bound by an arbitration agreement, although she did not actually sign one. Instead, at some point during her employment, defendants sent her a notification of an arbitration agreement, which informed her that it became binding if

she continued her employment with them and chose not to opt out within 30 days. A Kindred Healthcare employee testified to delivering the notification in person, but Brumfield argues that she was not made aware of its terms. However, under the terms of the arbitration agreement, the arbitrator is the one who must decide whether the agreement between Brumfield and defendants is valid and enforceable.

In general, arbitrability questions are "an issue for judicial determination." Peabody Holding Co., LLC v. UMW, 665 F.3d 96, 102 (4th Cir. 2012) (internal quotation marks omitted). However, where an agreement "clearly and unmistakably provide[s] that the arbitrator shall determine what disputes the parties agreed to arbitrate[,]" the arbitrability decision is left to the arbitrator. AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). In Rent-A-Center, the Supreme Court reinforced that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,'" such as whether the arbitration agreement is even valid or whether it covers a particular type of controversy. Rent-A-Center, 561. U.S. at 69. Rent-A-Center involved an arbitration agreement that delegated the question of arbitrability to the arbitrator, which the court referred to as the "delegation clause." The Court found that when an arbitration agreement includes a delegation clause, in order for the Court to be able to consider the validity of the agreement rather than sending it straight to arbitration, the party challenging the agreement must specifically challenge the delegation clause, rather than the validity of the entire agreement. The plaintiff in Rent-A-Center argued, in response to the defendant's motion to compel arbitration, that the case should not be sent to arbitration because the arbitration agreement itself was unconscionable and therefore invalid. The plaintiff did not, however, challenge the validity of the individual clause

8

delegating to the arbitrator the power to decide gateway issues of whether the agreement is even valid and enforceable. Id. at 72–74. The Court upheld the arbitration agreement, reasoning that "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id. at 69.

Here, in plaintiffs' response to the motion to compel arbitration, plaintiffs have only challenged the validity of the arbitration agreement as a whole. They have not specifically challenged the delegation clause within the agreement as being invalid.[1] Rather, plaintiffs argue more generally that there is a genuine dispute about material facts regarding the existence of a valid arbitration agreement and focus on the the class / collection action waivers being invalid. Plaintiffs claim that the "arbitration agreement [ ] unambiguously designates important questions of enforceability to this court." ECF No. 31 at 4. This is not a challenge to the delegation clause, but is rather a reference to the class / collective action waiver clause, which does leave the decision about the validity of

---

[1] The following are all of the references made by plaintiffs to the validity of the arbitration agreement in their response to defendants' motion to compel: "Brumfield disputes that she ever agreed to individual arbitration." ECF No. 31 at 3; "The arbitration agreement though unambiguously designates important questions of enforceability to this court." Id. at 4; "Defendants rely on non-binding cases that hold only that this Court cannot compel the Plaintiffs to arbitrate outside of this District. . . . However, it does not follow that this Court is prohibited from addressing the validity of the arbitration agreement in the first place." Id. at 12; "At this stage of the litigation, Defendants cannot meet their burden of showing that there is no genuine dispute as to any material fact regarding the existence of an agreement to arbitrate." Id. at 18–19 (followed by arguments that there is no concrete evidence that Brumfield was ever actually made aware of the agreement; "this court has no basis to 'conclude that her decision to remain in her position . . . evidenced any intent to arbitrate all disputes.'" Id. at 20 (followed by claims that the class and collective action waivers in the agreements violate the NLRA).

that clause to the court. The court acknowledges the unequal bargaining power between large companies and employees like the plaintiffs and recognizes that binding Brumfield to an arbitration clause without the her even needing to sign the agreement appears suspect. However, the court is bound by the Supreme Court's very clear ruling and must enforce the arbitration agreement since plaintiffs have not specifically challenged the delegation clause. Brumfield last worked for defendants in Tyler, Texas. Thus, the court transfers her case to the United States District Court for the Eastern District of Texas to allow that court to compel her to arbitrate her claim.

### C. Transferring Cynthia Harris's Claim

Finally, there is Harris, who has no arbitration agreement with defendants. For the reasons set forth below, the court transfers her case to the Northern District of Georgia. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented . . . ." 28 U.S.C. § 1404(a). "The burden is on the movant to show that transfer pursuant to Section 1404(a) is proper." Virginia Innovation Scis., Inc. v. Samsung Elecs. Co., 928 F. Supp. 2d 863, 867 (E.D. Va. 2013). "Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge." Herring v. LaPolla Indus., Inc., 2013 WL 12148849, at *3 (D.S.C. Oct. 7, 2013) (quoting Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991)). In exercising this discretion, courts weigh a number of factors:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate;

> (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Id. The four primary factors to consider in evaluating a motion to transfer under § 1404(a), consolidated from the eleven factors listed in Herring, are: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." Id. (quoting Dicken v. United States, 862 F. Supp. 91, 92 (D. Md. 1994)).

Defendants first argue that that Harris's choice of venue should be given little weight because the events giving rise to her claims did not occur in this district.

> Generally, a plaintiff's choice of forum will not be disturbed lightly; a defendant has a heavy burden when it moves to transfer a venue properly selected by the plaintiff. This burden, however, is relaxed when the plaintiff does not reside in the forum state . . . or when the "plaintiff sues in a forum which has no discernible connection with the controversy."

Blevins, 2011 WL 2670590, at *6 (quoting Sw. Equip., Inc. v. Stoner & Co., 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010)) (emphasis added). The court agrees with defendants regarding this factor. While it might have made sense for Harris to opt-into a collective action lawsuit that had already been filed in South Carolina, Harris's claim alone does not have any substantial connection to this district. Harris resides in Georgia. She did not work in South Carolina, but rather worked as a licensed nurse in Marrietta, Georgia. As Harris's claim is now severed from the collective action that has been dismissed, if she were to pursue her individual claim against defendants, she would likely still be alleging that defendants' failure to pay her overtime while working for them in

11

Marrietta, Georgia violates the FLSA. It would also be inaccurate to state that Harris "chose" to pursue this district out of all the possible districts in the country in which she could have brought suit. Harris did not choose to initiate litigation in this district; rather, she merely joined pre-existing litigation in a district of another plaintiff's choosing. Thus, this first prong weighs heavily in defendants' favor because South Carolina has "no discernible connection with [her independent] controversy."

The second factor, the convenience of and access to witnesses, also weighs in defendants' favor. "The number of witnesses is a factor to be considered as well as the nature and quality of the testimony, the distances and inconveniences involved." Mims v. Proctor & Gamble Distrib. Co., 257 F. Supp. 648, 655 (D.S.C. 1966), (citing Southern R.R. Co. v. Madden, 235 F.2d 198 (4th Cir. 1956). Harris worked for Kindred at Home – Marietta. Documents and witnesses regarding her case will most likely come from that office, and it is more convenient for those witnesses if the litigation proceeds in Georgia rather than South Carolina.

Third, the court considers the convenience of the venue to the parties. Harris lives in Georgia. Defendants are located in Louisville, Kentucky. South Carolina is inconvenient for both parties, while Georgia is at least convenient for the plaintiff, and is actually closer to Louisville, Kentucky than Charleston. Thus, the court transfers Harris's claim to the Northern District of Georgia.

The final prong that courts consider in determining whether to transfer venue under § 1404(a) is the interest of justice. Evaluating "the appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action" is an aspect of this fourth factor. Herring, 2013 WL 12148849, at *3. This factor

equally benefits both parties' arguments, since the case involves FLSA claims, which any district court can adjudicate with equal competency.

Because the relevant factors weigh in favor of a district court in Georgia hearing Harris's claims, the court transfers of case to the United District Court for the Northern District of Georgia.

### III. CONCLUSION

Based on the foregoing, the court grants in part and denies in part the motion to transfer. The court (1) strikes the collective action; (2) compels Tyler to arbitrate his claims; (3) transfers Scoon and Jackson's cases to the United States District Court for the Southern District of Alabama; (4) transfers Brumfield's case to the United States District Court for the Eastern District of Texas; and (5) transfers Harris's case to the United States District Court for the Northern District of Georgia. The court refrains from ruling on the motion to stay.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 2, 2018**
**Charleston, South Carolina**